IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

Cause No. 2:18-cv-00318-JTM-JEM

KARMEN LEE DAVIS,                                                                             Plaintiff,

   v.

ARCELORMITTAL USA, LLC,
(formerly Arcelormittal Indiana Harbor, LLC),                                        Defendant.

### AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### I.  INTRODUCTION

This is a civil action brought by Plaintiff, Karmen Lee Davis, against her employer, Arcelormittal USA, LLC (formerly Arcelormittal Indiana Harbor, LLC) [Defendant], because of policies and practices which caused and continue to cause Plaintiff to suffer discrimination in her pursuit of employment based on her disability in violation of federal discrimination laws causing Plaintiff to suffer mental anguish, humiliation and diminishment of her quality of life and lost employment opportunities, advancement, income and other benefits.

Plaintiff seeks redress for the discrimination practiced against her because of her well known and established disabilities which Defendant repeatedly refused to accommodate.

For her relief, Plaintiff asks for injunctive relief, damages for her physical and mental injuries including lost income and extra expenses she incurred, prejudgment and postjudgment interest, litigation expenses, costs, and attorney fees.

### II.  JURISDICTION AND VENUE

A.   This action arises under the provisions of Title I of the Americans with Disabilities Act of 1990 (ADA, 42 USC §12111), as amended by the ADA Amendments Act of 2008 (ADAAA).  See

42 USC §12101 et. seq.

    B.    This Court has jurisdiction of this cause under the provisions of 28 USC §§1331 and 1343.

    C.    Venue is proper under 28 USC §1391 in that this action is being brought in the Northern District of the State of Indiana which is where Defendant does business and employed Plaintiff and where the cause of action arises.

    D.    Declaratory and injunctive relief is authorized pursuant to 28 USC §§2201 and 2202 and Federal Rules of Civil Procedure, Rules 57 and 65.

    E.    Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) as Charge Number 846-201730278 on September 6, 2017, and amended on or about January 15, 2018.  The EEOC issued a "Notice of Right to Sue" to Plaintiff on or about May 29, 2018, which she received on or after June 4, 2018,

### III.  JURY DEMAND

Plaintiff requests that this matter be tried by jury as to damages.

### IV.  PLAINTIFF

Plaintiff is Karmen Lee Davis (Karmen), an individual who resided throughout her employment with Defendant and still resides in Portage, Indiana.

### V.  DEFENDANT

    1.    Arcelormittal USA, LLC, does business in Indiana as a "foreign limited liability company" formed in Delaware,  It has at least fifteen employees.

    2.    Defendant is a steel making facility; and

    3.    Is being sued for damages, injunctive and other relief.

### VI.  UNDERLYING FACTS

    A.    On or about March 4, 2013, Karmen started working for Defendant as a laborer in the

2BOF East side of the plant at 3210 Watling Street, East Chicago, IN 46312;

    B.    In June of 2014, Karmen was working as a Hot Metal Pourer when she was involved in a bad accident for which she had to take medical leave until July of 2014.

1. The accident involved Karmen's fall into a thirty-two foot pit nearly costing her her life and resulting in several surgeries and ongoing treatment.
2. Karmen was badly injured and placed on restrictions for her injuries which included PTSD (post-traumatic stress disorder), post concussive trauma with migraines and physical injuries.
3. The restrictions included no lifting over 30 pounds, no repetitive overhead work and no prolonged walking.
4. Karmen eventually returned to work in November of 2014 at the same Scrap Inspector position she held before.
5. There is no evidence that she was unable to perform the duties of a Scrap Inspector or other job not within the area where she fell working as a Hot Metal Pourer.
6. There was evidence that the tragedy caused her a fear to enter the production floor where the accident took place and caused her PTSD.
7. She tendered a diagnosis from her psychologist regarding her PTSD.
8. Jennifer Spiegal, HR for Defendant, told her that neither the restrictions nor the psychologist's diagnosis of PTSD were sufficient.
9. Defendants eventually and arbitrarily decided as of August 31, 2017, that: a.Karmen could not work anywhere except for the administrative building; and
    
    b.    If she could pass the clerical battery test.
10. There was no evidence again that she could not work as a Scrap Inspector given her

        physical and mental restrictions and experience.

   D.   Defendant's supervisors and managers were well aware of what Karmen had gone through, her continuing diagnoses and her experience and training as a Scrap Inspector.

        1.   Karmen applied for and was granted FMLA for the post concussive trauma diagnosis, but did not use it.

        2.   In October of 2014, Karmen underwent another medical procedure and:

        3,   Returned to work in November of 2014 as a Scrap Inspector.

   E.   On or about July 12, 2016:

        1.   Karmen's PTSD diagnosis was presented by John (Hulio) Martinez:

            a.   Without Karmen's permission as part of a training class;

            b.   He referred to Karmen as being "crazy" while she suffered a breakdown in the training class;

            c.   As she tried to explain the difficulty of being in that type of environment..

        2.   As a result, Karmen suffered another breakdown; and

        3.   Was sent to the company clinic therapist, Ray Wojohoski

            a.   As ordered by Martinez; and

            b.   Another manager, Steve Keck

        4.   The discussion with Ray was about Karmen's PTSD and this episode with Martinez.

        5.   The Clinic had full knowledge of Karmen's condition.

   F.   Defendant later claimed that her position was eliminated by a complete shutdown of the plant within which she was injured.

        1.   However, the duties and procedures were still being performed.

        2.   Karmen was told to give her key to the scrap trailer to Karen Johnson who took over

        Karmen's former job as a Scrap Inspector.

    3. The job Karmen had still exists and she could then and can still do the duties of that job, Scrap Inspector, wherever it might be.

    4. Instead of accommodating Karmen, the move and her diagnosis were used to oust her from doing any work for Defendant.

    5. Karmen had performed as Scrap Inspector:

        a. For three years with her restrictions and disability.

        b. The same job that was given to someone without any disabilities.

        c. In any case, Al Pace, Scrap Department head, said that he wanted Karmen to stay; and

        d. Perform the duties of Scrap Inspector after the 2BOF shutdown.

G. As part of her efforts at getting an accommodation for a job, Karmen:

    1. Returned to the clinic on June 6, 2017, with a copy of her diagnosis from her psychologist dated May 5, 2016.

    2. Also provided a diagnosis from her neurologist she had previously submitted to Martinez.

H. Despite her submissions and contentions, Karmen was forced to go on S&A (medical) leave where she only received:

    1. Seventy per cent of her base pay;

    2. No overtime pay;

    3. No allotment into her 401K; and

    4. Only a minimum percentage of bonuses given to other hourly employees.

I. The limitation to S&A leave was an adverse action because:

       1. It was involuntarily invoked;

       2. It caused a reduction in income and other benefits offered to the non-disabled; and

       3. It has either expired or will expire in the near future.

J. The union representative told Karmen that Defendant does not consider a mental illness or injury a disability, only physical disabilities count.

       1. She was told to stay on S&A leave to get something; however,

       2. She turned in her mental diagnoses anyway.

       3. Company representatives then claimed she could not perform the tasks required of a Scrap Inspector which she had done all along; or

       4. Even work at the mill anymore at all because of her diagnoses.

K. Defendant told her to test for a clerical position for which she was not initially qualified nor really interested.

       1. She did consider taking the testing battery anyway.

       2. She was required to do a walk through to show whether she could work in the plant again at all - she could.

       3. Defendant's representative assumed she could not do her old job as a Scrap Inspector based on false assumptions surrounding her PTSD.

       4. As a result of these activities, Karmen elected not to take the clerical battery since the outcome was pre-determined.

L. As of January 15, 2018:

       a. The Scrap Inspector position was not phased out;

       b. Karen Johnson was performing that job and other duties; and

       c. Was not disabled.

    d. Karmen filed a complaint with Ron Allen, Human Resources, but

    e. Nothing came of her complaint.

 J. Karmen filed her charge with the EEOC when nothing else worked.

## VII.  CAUSE OF ACTION

The allegations above state a claim for relief based on the policies and practices of Defendant and its employees and agents which deprived Plaintiff of the rights and privileges guaranteed her by federal law and Title I of the Americans with Disabilities Act of 1990 (ADA, 42 USC §12111), as amended by the ADA Amendments Act of 2008 (ADAAA).  See 42 USC §12101 et. seq.

## VIII.  RELIEF REQUESTED

Plaintiff asks the Court to give her judgment for the discriminatory violations of federal law committed against her and grant the following relief for the injuries described in this Complaint which were all proximately caused by Defendant and its employees or agents:

 A. Find and adjudge that Plaintiff is entitled to recover from Defendant money damages to compensate Plaintiff for her pecuniary losses including back and front pay and her non-pecuniary injuries including mental anguish and humiliation.

 B. Order Plaintiff be given fair and unbiased opportunities to work without any reference in her record to her PTSD and other injuries.

 C. Order that employees of Defendant not refer to her disabilities for any reason nor require her to take any tests, medical or otherwise, not required of employees without disabilities and be required to be trained in how to prevent such events from happening again to Plaintiff or any other employee.

 D. Award attorney fees, litigation expenses and costs as allowed by law.

 E. Grant prejudgment interest on any amounts awarded to Plaintiff as damages and post-

judgment interest until any judgment is paid..

    F.    Set a date for a trial in this matter by jury as to damages and to the court as to equitable relief.

    G.    Grant any other relief determined necessary to do justice under the circumstances.

                                    Respectfully submitted,
/s/ John Emry
John Emry, 8360-49
Attorney for Plaintiff
62 W. Jefferson Street
Franklin, IN  46131-2311
317-736-5800; 317-736-6070 (fax)
E-mail: johnemry1@yahoo.com

JE/jwe//DavisKarmenComplaint