UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| KARMEN LEE DAVIS,<br><br>        Plaintiff,<br><br>v.<br><br>ARCELORMITTAL USA LLC (formerly ArcelorMittal Indiana Harbor LLC),<br><br>        Defendant. | Case No. 2:18-cv-00318-JTM-JEM |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Defendant ArcelorMittal USA LLC ("ArcelorMittal" or "the Company"), submits this Memorandum in support of its Motion for Summary Judgment.

**INTRODUCTION**

On March 4, 2021, this Court partially granted Defendant's motion for summary judgment and dismissed all but one of Plaintiff's claims -- a hostile work environment claim under the Americans with Disabilities Act. Plaintiff's hostile work environment claim fails as a matter of law for two independent reasons. First, Plaintiff failed to exhaust her administrative remedies because she did not include any indication of a hostile work environment claim in her EEOC charge. Second, the alleged comments Plaintiff claims created a hostile work environment fall well short of the severe or pervasive threshold for such claim.

**STATEMENT OF MATERIAL FACTS**

    **A.**    **The Parties**

ArcelorMittal operates a steel-making facility. Complaint, p. 2, ¶ V(2). Plaintiff began work for the Company on or about March 4, 2013, as a Utility Person in its No. 2 Steel

79313387v.1

Producing ("2SP") area of its Indiana Harbor facility.  Deposition of Karmen Lee Davis ("Davis Dep.") at 16:4-8; Complaint, pp. 2-3, ¶ VI(A); Declaration of Ronald Allen ("Allen Decl.") at ¶ 6.  She subsequently performed tagger, hot metal helper, and then hot metal pourer tasks.  Davis Dep. at 17:1-25, 18:1-25; 19:1-16.

      **B.**    **Plaintiff's Accident and Initial Medical Leave**

On June 13, 2014, when Plaintiff was performing hot metal pourer tasks (as an Operating Technician), she fell into a pit and sustained injuries.  Davis Dep. at 19:12-16, 20:8-10, 21:2-10; Allen Decl. at ¶ 8.  Immediately after the accident, Plaintiff took medical leave and later returned to work in July 2014.  Complaint, p. 3, ¶ VI(B).

      **C.**    **Plaintiff Returned to Work With Restrictions that the Company Accommodated**

Plaintiff's return to work form said she would return July 30, 2014, with these restrictions: "Sedentary office work.  No use Rt arm -- Use of crutch.  No stairs."  Davis Dep. at 25:9-25, 26:1, Ex. 6 (7/30/14 Return to Work Form).  To accommodate her restrictions, the Company assigned her a temporary, sedentary position in a trailer and she returned to work and performed that task.  Davis Dep. at 26:2-19.

By September 10, 2014, Plaintiff's restrictions changed.  Davis Dep. at 27:1-6.  Her new return to work form indicated "No lifting > 5 lbs Rt Arm, No overhead work, Sedentary office work."  Davis Dep. at 27:57-23, Ex. 7 (9/10/14 Return to Work Form).  To accommodate these new restrictions, the Company assigned Plaintiff to perform scrap inspector tasks in 2SP, a role in which she checked scrap trucks in and checked scrap on the camera.  Davis Dep. at 28:2-4, 28:25, 29:1-7.  This was a desk job that involved no climbing, lifting, nor walking, and was not on the production floor.  Davis Dep. at 29:2-23.  No one told her this position was permanent.  Davis Dep. at 32:1-9.

2

79313387v.1

The Company continued to have her perform scrap inspector tasks in 2SP through 2015. Davis Dep. at 36:21-24. Plaintiff agrees that through 2015, the Company was accommodating her restrictions and she did not experience any disability discrimination. Davis Dep. at 36:25, 37:1-5, 37:12-17. Plaintiff also performed scrap inspector tasks in 2SP through 2016. Davis Dep. at 37:18-25, 38:1; Allen Decl. at ¶ 8, Ex. B.

### D. Plaintiff's Attendance At Union Safety Training Causes Panic Attack

Plaintiff claims that during a union safety training, the union's representative conducting the training brought up her accident (without naming her) and showed footage of the department where the accident occurred, causing her to have a panic attack. Davis Dep. at 50:24-25, 51:1-24, 52-1-24. She claims that after that incident, she spoke with her supervisor, John Martinez, who said, "Well, you're required to go to those. You're just crazy." Davis Dep. at 53:3-25, 54:1-12.

Plaintiff claims that she initially wanted to go back on the production floor "to face it" but that none of her bosses would let her. Davis Dep. at 55:10-17. She concedes that Martinez, who was being "an okay person at the time," had asked her when she was "going to get back out there" -- to which she replied, "that window of opportunity has passed" and that she couldn't "go back there now." Davis Dep. at 55:18-56:2. She claims he knew she had emotional issues resulting from the accident because, within a year after the accident, she had the above conversation with him. Davis Dep. at 54:13-25, 55:1-25, 56:1-2. She also claims that he would come into the trailer and say he was going to "put her out on the production floor." Davis Dep. at 56:10-25, 57:1-5. She does not know how often he made these comments and admits that she did not complain to anyone about them. Davis Dep. at 56:23-25, 57:1-11.

After her safety training episode, she went to a psychologist to get updated restrictions. Davis Dep. at 57:6-25.  In a letter dated May 5, 2016, Plaintiff's psychologist diagnosed her with PTSD.  Davis Dep. at 58:13-25, 59:1-25, 60:1-8, Ex. 11 (5/5/16 Letter).  This was the first time she had presented an actual diagnosis of PTSD or psychological issues to the Company.  Davis Dep. at 57:6-25.

Nonetheless, Plaintiff testified she did not experience discrimination in 2016:

Q:  Would you also agree that you did not experience disability discrimination in 2016?
A:  Correct.

Davis Dep. at 39:18-21.

### E. In May 2017, the Company Closed the Entire 2SP Area, Eliminating the Positions of Plaintiff and All 2SP Employees

In May 2017, ArcelorMittal closed the 2SP area, eliminating all 2SP positions, including Plaintiff's.  Davis Dep. at 40:7-22.  Consequently, the Company placed Plaintiff in a Labor Utilities position in 4SP.  Davis Dep. at 42:6-25.  On June 5, 2017, her first day in the new role, Plaintiff had an episode during orientation and safety training and could not go into the shop or onto the plant floor.  Davis Dep. at 43:1-25, 44:1-8.  But as of that date, there were no restrictions in her permanent medical restrictions, psychologist letter, or any other medical documentation that prevented her from working in the production area.  Davis Dep. at 60:14-25, 61:1-4, 62:2-7, 62:18-23.

Later in June 2017, Plaintiff got an updated restriction from her psychologist barring her from going or working in the plant.  Davis Dep. at 66:25, 66:1-2, 67:3-5, 68:4-13, Ex. 13 (6/12/17 Attending Provider Statement).  This updated restriction was the first medical documentation that Plaintiff provided to the Company that said she could not work on the production floor.  Davis Dep. at 62:2-7.

### F.     Plaintiff Files Her EEOC Charge of Discrimination

In September 2017, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission.  Davis EEOC Charge of Discrimination.  Plaintiff's Charge states, in whole:

> I was hired by ArcelorMittal in March 2013 as a Laborer.  I have worked most recently as Scrap/Inspector/Hot Metal Pourer.  My immediate supervisor is Andre Joseph.
>
> On June 5, 2017 I went to work in a new department, but following my orientation I was unable to do so because of my disability.  I was told by HR Rep Jennifer Spiegel, that my condition was not medical and that if I did not go into the plant, I would be insubordinate and required to go to the clinic.  Spiegel told me that the only restrictions she was obligated to follow were my "M" code/physical ones which did not hinder me from entering the plant.  I refused to enter the plant and was driven to the clinic to be assessed.  I later inquired about returning to the job I had been performing following my work accident, as it was still available and being performed.  Spiegel told me that the position was temporary and the department was closing so it would no longer be available.  I was told that my disability could no longer be accommodated and that I was placed on S&A.  As of current 2017 the position has not been phased out and is being performed by Karen Johnson even though Johnson had a bid in another department and was not required to move.
>
> I believe that I am being discriminated against because of my disability, in violation of the Americans with Disabilities Act of 1990, as amended.

## STANDARD OF REVIEW

Summary judgment is appropriate when the record evidence shows "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(c).  Speculation or conjecture will not defeat a summary judgment motion.  *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008).

**ARGUMENT**

Plaintiff has one remaining claim under the Americans with Disabilities Act (ADA): that her supervisor created hostile work environment based on her disability. This claim fails as a matter of law.

**I. PLAINTIFF FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES**

Before a plaintiff can bring an ADA claim, she must exhaust her administrative remedies by filing charges with the EEOC and receiving a right to sue letter. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019); *Arrigo v. Link*, 836 F.3d 787, 793 (7th Cir. 2016); *Stepney v. Naperville School Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004). The primary purpose of the EEOC charge requirement is twofold: it gives the EEOC and the employer a chance to settle the dispute, and it gives the employer notice of the employee's grievances. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). The EEOC charge and the complaint must, at minimum, "describe the *same conduct* and implicate the *same individuals.*" *Id.* (emphasis in original). The appropriate inquiry is "what EEOC investigation could reasonably be expected to grow from the original complaint." *Ajayi v. Aramark Bus. Servs., Inc.,* 336 F.3d 520, 527 (7th Cir. 2003). Where the allegations of a complaint "can be reasonably inferred from the facts alleged in the charge," the allegations are within the scope of the EEOC charge. *Id.* "When an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent complaint are not reasonably related to them unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge." *Cheek,* 31 F.3d at 503.

Here, Plaintiff's EEOC charge does not include a hostile work environment claim, nor does it allege Plaintiff was subjected to and/or complained of harassment. It also lacks any

6

mention of Mr. Martinez -- the supervisor whom she now claims created a hostile work environment. Instead, Plaintiff's EEOC charge simply asserts a failure to accommodate claim -- which this Court has already dismissed. Consequently, Plaintiff has failed to exhaust her administrative remedies and this Court should dismiss the hostile environment claim as a matter of law.

## II.  PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM FAILS AS A MATTER OF LAW

To survive summary judgment, Plaintiff must present evidence that: (1) she was subjected to unwelcome harassment; (2) the harassment was based on her disability; (3) the harassment was so severe or pervasive as to alter the conditions of her employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *Ford v. Marion Cty. Sheriff's Off.*, 942 F.3d 839, 856 (7th Cir. 2019) citing *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 900 (7th Cir. 2018).

It is not enough to show only that an employee suffered mistreatment because of their disability -- to rise to the level of an actionable hostile work environment, the complained-of conduct must have been sufficiently severe or pervasive to have altered the conditions of her employment such that it created an abusive working environment. *See EEOC v. Management Hosp. of Racine, Inc.*, 666 F.3d 422, 432 (7th Cir. 2012), citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). In making this assessment, courts look at a variety of factors including the severity of the allegedly discriminatory conduct, its frequency, whether it was physically threatening or humiliating or merely offensive, and whether it unreasonably interfered with the employee's work performance. *See Gentry v. Export Packaging Co.*, 238 F.3d 842, 850 (7th Cir. 2001), quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). However, it is well established that offhand comments, isolated incidents, and simple teasing do not rise to the level

of conduct that alters the terms and conditions of employment. *See Adusumilli v. City of Chicago*, 164 F.3d 353, 361 (7th Cir.1998), citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

This case is easily decided in light of the Seventh Circuit's decision in *Silk v. City of Chicago*, which detailed far worse treatment that was not actionable as a hostile work environment. Silk was an officer with the Chicago Police Department who suffered from a sleep disorder. *Silk v. City of Chicago*, 194 F.3d 788, 794–95 (7th Cir. 1999). After the police department accommodated Silk's sleeping disorder, he claimed that he was subject to a hostile work environment, including: (1) verbal harassment, such as being called a useless piece of [vulgarity], a medical abuser, a limited duty phony, and having his condition referred to in roll call as a [vulgarity] medical problem; (2) threats of physical violence, such as bomb threats, and another sergeant threatening to kick Silk's [vulgarity], telling Silk to get out of his way, and stating that it wouldn't take much for the sergeant to knock Silk on his [vulgarity]; (3) lowered performance ratings; (4) compelled loss of his teaching job; and (5) administrative harassment, such as losing earned days of leave without justification, being told not to "act up" to supervisors, losing supervisory authority over other patrol officers, and being ridiculed. *Id*. at 796–97.

The Seventh Circuit considered the collective effect of Silk's alleged treatment, and found that it did not alter the conditions of his employment, nor rise to the level of a hostile work environment. *Id*. at 807–08 (stating that Title VII excludes instances of hostile treatment that have little or no effect on an employee's job) (quoting *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir.1998)). The *Silk* court noted that Silk continued to do his job without impediment from the harassment, concluding, "Silk failed to demonstrate that the workplace was permeated with

8

discriminatory conduct—ridicule, intimidation, insult—that was sufficiently severe or pervasive to alter the conditions of his employment." *Silk*, 194 F.3d at 808.

Here, the alleged comments of which Plaintiff complains are nowhere near as offensive as the treatment Silk received, nor did they alter the conditions of her employment. Indeed, Plaintiff points to only two allegedly harassing comments. First, she alleges Mr. Martinez told her, after she experienced an incident at the union's 2016 safety training, "[w]ell, you're required to go to those. You're just crazy." This is a perfect example of a "stray" comment that is insufficient to support a claim of workplace hostility. *See, e.g., Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 648 (7th Cir. 2011) (stray comments over intercom that included the word "monkey" were insufficient to maintain racial hostile work environment claim); *Overly v. KeyBank Nat. Ass'n*, 662 F.3d 856, 865 (7th Cir. 2011) (claim that plaintiff was referred to as a "bitch" was a stray remark that failed to create workplace hostility). Moreover, this offhand remark lacks any connection to her PTSD disability as it is undisputed that Plaintiff had not yet been diagnosed with PTSD when Mr. Martinez allegedly made this comment.

The second comment concerns Plaintiff's allegation that following her incident at the 2016 safety training -- but before she received medical restrictions preventing her from working on the production floor -- Mr. Martinez periodically told her that he was going to put her back on the production floor. While Plaintiff now tries to rely on these vague, periodic comments as evidence of a hostile work environment by characterizing them as "threats," Plaintiff cannot sincerely argue that these comments she attributes to Mr. Martinez are even close to the clear and direct physical threats involved in *Silk* -- which the Seventh Circuit found insufficiently severe or pervasive to alter the conditions of Silk's employment. Furthermore, Plaintiff's job duties involved work on the production floor -- so it was not unexpected that her manager would

request that she do so -- and she conceded that she did not complain about these comments to anyone. Finally, Plaintiff provides no evidence that her job performance was impeded by these vague, periodic comments.

In short, even if Plaintiff could prove that Mr. Martinez made an offhand remark calling her "crazy," or said that he intended to ask her to continue working on the production floor before her doctor issued a restriction precluding it. these comments do not constitute harassment so severe or pervasive to alter the conditions of her employment and they certainly do not create an abusive working environment. Therefore, even if Plaintiff had stated a hostile work environment claim in her EEOC charge relying on these comments, (which she did not), she could not establish the claim as a matter of law.

## CONCLUSION

Since Plaintiff failed to exhaust her administrative remedies and the undisputed evidence shows that her hostile work environment claim fails as a matter of law, Defendant respectfully requests that the Court grant its motion for summary judgment.

**DATED:  February 4, 2022**              Respectfully submitted,

                                                    ARCELORMITTAL USA LLC

                                         By: */s/ Ryan L. Young*
                                                   One of its Attorneys

Lynn A. Kappelman
lkappelman@seyfarth.com
Seyfarth Shaw LLP
Seaport East, Suite 300
Two Seaport Lane
Boston, MA 02210-2028
Tel: (617) 946-4800
Fax: (617) 946-4801

Ryan L. Young *(Pro Hac Vice)*
ryoung@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois  60606
Tel:  (312) 460-5000
Fax: (312) 460-7000

*Attorneys for Defendant*

11

79313387v.1

## CERTIFICATE OF SERVICE

I certify that on February 4, 2022, I caused a true and correct copy of **DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** to be filed via the CM/ECF system, which will notify counsel of record, including the following:

> John Emry
> 62 W. Jefferson Street
> Franklin, IN 46131
> johnemry1@yahoo.com

>           */s/ Ryan L. Young*
>            Ryan L. Young