UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| KARMEN LEE DAVIS,<br><br>   Plaintiff,<br><br> v.<br><br>ARCELORMITTAL USA LLC (formerly ArcelorMittal Indiana Harbor LLC),<br><br>   Defendant. | Case No. 2:18-cv-00318-JTM-JEM |

**DEFENDANT'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Defendant ArcelorMittal USA LLC ("ArcelorMittal" or "the Company"), submits this Reply in support of its Motion for Summary Judgment.

**ARGUMENT**

Plaintiff has one remaining claim under the Americans with Disabilities Act (ADA): that her supervisor created a hostile work environment based on her disability. Plaintiff's three page Response argument fails to rebut both of Defendant's arguments -- that Plaintiff failed to exhaust her administrative remedies and failed to establish a hostile work environment claim as a matter of law.

**I.   PLAINTIFF FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES**

Plaintiff's Response maintains that she exhausted her administrative remedies. Yet, Plaintiff does not argue that her original EEOC charge included (i) a hostile work environment claim, or (ii) any allegation that Plaintiff was subjected to harassment. Instead, Plaintiff claims that she sent two *private* letters to the EEOC -- five and seven months after filing her initial charge in July 2017 – and thereby amended her original charge to include a hostile work

80687840v.2

environment claim.[1]  Fatal to this argument is the fact that she never sent these letters to Defendant or put it on notice in any way that she hoped to amend her charge to add new claims.

It is well established that private letters to the EEOC cannot expand the scope of the allegations in Plaintiff's original charge; <u>they may only "clarify or amplify" the allegations in the original charge</u>.  *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 502-503 (7th Cir. 1994) citing 29 C.F.R. § 1601.12(b) (which allows a charge to be amended "to clarify and amplify the allegations made therein.")  In *Cheek*, the Seventh Circuit rejected the same argument Plaintiff tries to advance here -- specifically, that the plaintiff's 16-page letter to the EEOC (which almost entirely related to her sex discrimination claim and included only scant allegations of sexual harassment) amended her original charge (which only included allegations of sex discrimination) with a sexual harassment claim.  *Id*. at 503.  The Court noted that the only reference in the plaintiff's letter to anything that might be considered sexual harassment (that a manger not named in her original charge continuously told her "if you don't make it in this business, you have a husband to fall back on") doubtfully rose to the level of actionable harassment.  The Court concluded that it could not infer her sexual harassment claim from her letter since the manager's comments neither clarified nor amplified any claim made in her original charge.  *Id*. at 504-505.

Plaintiff's situation is nearly identical.  Her original EEOC charge asserted only a failure to accommodate claim.  It made no reference to the comments she now claims created a hostile work environment, nor did it mention Mr. Martinez (the manager she claims made the

---

[1] Defendant was never on notice of the claim. Defendant did not receive this correspondence from Plaintiff or the EEOC while it was investigating Plaintiff's charge, nor did the EEOC amend Plaintiff's charge with the additional failure to accommodate allegations.  Further, while Plaintiff produced her March 1, 2018 letter to the EEOC in response to Defendant's production requests, she did not produce her January 15, 2018 correspondence with the EEOC (ECF No. 48-1, pp. 2-7).

comments).  Moreover, the private letters she sent to the EEOC related almost entirely to Plaintiff's original failure to accommodate claim, and included only scant allegations of harassment.  (*See* ECF No. 48-1, pp. 4-12.)[2]  Like *Cheek*, Plaintiff's letters made one reference to a statement which she claims alleged disability, specifically -- "[a]s a result of not being able to complete that safety training, upon explaining the situation and being very distraught to my supervisor Hulio Martinez, he proceeded to call me crazy several times and dismiss it as not a big deal."[3]  (*See* Id., p. 5.)  She asserted nothing more.[4]  As in *Creek*, this single comment does not rise to the level of actionable harassment and it did not clarify or amplify any claim made in her original charge.  Consequently, the Court cannot infer her hostile work environment claim from her letters and must find that she failed to exhaust her administrative remedies as a matter of law.

## II.     PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM FAILS AS A MATTER OF LAW

In lieu of addressing Defendant's arguments head on, Plaintiff tries to support her hostile work environment claim with the same sham affidavits that this Court previously rejected in its ruling on the first motion for summary judgment.  (ECF No. 40, pp. 11-14.)   Plaintiff offers no evidence that Mr. Martinez's comments were so severe or pervasive that they altered the conditions of her employment, despite the fact that the clear precedent in this Circuit requires that she do so in order to set forth a hostile work environment claim. *See Silk v. City of Chicago*, 194 F.3d 788 (7th Cir. 1999),

---

[2] Plaintiff's Response referred to "Plaintiff's Exhibit 4" but did not attach the exhibit.  It appears that Plaintiff is referring to an exhibit found in ECF No. 48-1.

[3] Interestingly, the allegation in Plaintiff's private letter to the EEOC, like Plaintiff's deposition testimony, directly contradicts the position Plaintiff takes in her sham affidavit -- that Mr. Martinez presented her PTSD diagnosis and referred to her as "crazy" during a training class he himself conducted.  *Compare* Resp. Section III(A) *with* ECF No. 48-1, p. 5 and SF § D.  This contradiction is addressed fully in Section II(A) infra.

[4] In fact, neither of these letters mention Plaintiff's allegation that Martinez told her he would put her out on the floor.

3

### A. Plaintiff's Sham Affidavits Do Not Provide Evidence of a Hostile Work Environment.

As this Court already ruled, Plaintiff's allegations about Mr. Martinez are also contradicted by her own sworn admissions in this case. *Compare* Resp. at 2, ¶¶ (A)-(D) *with* SF § D. At deposition, Plaintiff testified that she had a panic attack at a 2016 safety training when an unidentified union leader trainer brought up her accident, without naming her, while discussing safety issues. She added that when she told Mr. Martinez *afterwards* about the episode, he said safety trainings were required and "you're just crazy." She alleges that when she expressed reluctance to go on the production floor, Mr. Martinez said he was going to put her out on the floor anyway. Finally, she noted that she *subsequently* received a PTSD diagnosis but she was not restricted from working on the production floor until a year later. SF §§ D, E.[5]

In her Response, she now tells *a contradictory story*, claiming that it was Mr. Martinez delivering the safety training, and that he brought up her PTSD in the training (an impossibility since by her own admission she had not yet even shared the diagnosis), and that he called her "crazy" in the training, causing the panic attack. Resp. at 2. In another about-face, she alleges now by affidavit that she complained about Mr. Martinez to "management," when she had already conceded under oath that she did *not* complain. SF § D. Finally, Plaintiff relies on these allegations about her former supervisor, Mr. Martinez, from 2016, despite her sworn admission

---

[5] Plaintiff also alleges that Jennifer Spiegel, Human Resources, denied Plaintiff had a disability because PTSD was a mental issue and only physical problems can be a disability. (Resp. at 2.) However, this allegation contradicts Plaintiff's own sworn admission that Ms. Spiegel was only explaining that Plaintiff needed to provide an updated restriction from the doctor regarding her PTSD, not denying that PTSD could be a disability. Davis Dep. at 84:18-25, 85:1-25, 86:1-14, 147:16-25, 148:1-25, 149:1-25, 150:1-16. In fact, Plaintiff claims that her union representative told her the company would not help with a mental disability but concedes he was wrong. Davis Dep. at 151:1-16, 148:21-25, 149:1-4.

4

that she suffered *no discrimination in 2016*.[6] Resp. at 2 ¶¶(A)-(D)[7]; 4-5; SF § D ("Q: Would you also agree that you did not experience disability discrimination in 2016? A: Correct."). This is what is known as a "sham affidavit." It is well-established that a "plaintiff cannot . . . create an issue of material fact by submitting an affidavit that contradicts an earlier deposition." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 759 (7th Cir. 2006).

Similarly, Plaintiff cannot establish a hostile work environment by submitting the three-sentence affidavit from coworker Jose Flores claiming he was "harassed" by Mr. Martinez.[8] Resp. Ex. 2.[9] Mr. Flores does not state when such "harassment" purportedly occurred, or the nature of it, nor does he even tie the alleged harassment to a disability. *Id.* Her coworker's vague, conclusory allegation does not support Plaintiff's claim that she suffered a hostile work environment because of her disability.

### B. Plaintiff Failed to Distinguish Hostile Work Environment Precedent

Regardless of the sham affidavits, even if Plaintiff could prove that Mr. Martinez made a stray remark calling her "crazy," or said he would put her out on the floor before she had even tendered a restriction precluding it in 2016, she fails to show that such conduct was sufficiently severe or pervasive and altered the conditions of her employment, as this Circuit requires in its precedent.

---

[6] Plaintiff oddly devotes a third of her Response brief to arguing that Mr. Martinez was Plaintiff's supervisor and outlining the doctrine of vicarious liability. Resp. at 5-6. However, since Defendant does not dispute that Mr. Martinez supervised Plaintiff while she worked in 2SP, the issue of vicarious liability is irrelevant.

[7] Plaintiff has pasted conclusory allegations virtually word for word from her Complaint into her Response and affidavit, ignoring that her own later deposition testimony contradicted those same allegations. Compare Resp. at 2 ¶¶A-D with Amended Complaint at p. 4 ¶¶ E(1-5).

[8] Plaintiff also provides an affidavit from Trent Briner, an outside contract driver who "continued to deliver to the 4SP scrap yard" after 2SP closed, with no explanation whatsoever regarding how Mr. Briner's deliveries pertain to her hostile work environment claim. (*See* ECF 36-3.)

[9] Plaintiff did not attach the Flores affidavit to her Response, nor direct the Court or Defendant to its location. Defendant located the Flores affidavit in Plaintiff's previous response brief. (*See* ECF 36-2.)

80687840v.2

While Plaintiff understandably attempts to avoid the clear precedent in *Silk v. City of Chicago*, 194 F.3d 788 (7th Cir. 1999), she does not distinguish the case in any meaningful way. Instead, Plaintiff simply argues that her situation was different because "her path of employment was hurdle after hurdle" caused by Mr. Martinez's harassment. Resp. at 6. In other words, Plaintiff argues that Mr. Martinez's alleged comments caused "hurdles" that prevented her from returning to work.

This Court already ruled that Defendant appropriately accommodated Plaintiff's disability (*See* ECF 40, pp. 16-19), which undermines Plaintiff's argument that Mr. Martinez's comments set up hurdles preventing her from returning to work. In fact, the record is clear that the only "hurdle" that prevented Plaintiff from returning to work was Plaintiff's own medical restrictions prohibiting her from entering the plant. (Id., pp. 18-19) Not surprisingly, Plaintiff offers no evidence of, nor identifies any, specific employment "hurdles" for her that Mr. Martinez created by his alleged comments.

More important, Plaintiff provides no evidence that the two alleged comments she attributes to Mr. Martinez were severe or pervasive, or that they altered the conditions of her employment. See *Silk*, 194 F.3d at 807–08 (Title VII excludes instances of hostile treatment that have little or no effect on an employee's job). Plaintiff does not even address Defendant's argument that Mr. Martinez's alleged comment that she is "crazy" is a "stray" comment and, as such, not sufficient to support a claim of workplace hostility. *See, e.g., Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 648 (7th Cir. 2011) (stray comments over intercom that included the word "monkey" were insufficient to maintain racial hostile work environment claim); *Overly v. KeyBank Nat. Ass'n*, 662 F.3d 856, 865 (7th Cir. 2011) (claim that plaintiff was referred to as a "bitch" was a stray remark that failed to create workplace hostility). Plaintiff's claim that this

6

80687840v.2

offhand remark is connected to her PTSD disability is undermined by one key fact -- it is undisputed that Plaintiff had not been diagnosed with PTSD at the time Mr. Martinez allegedly made this comment.

Plaintiff also fails to provide evidence that Mr. Martinez allegedly telling her that he was going to put her back on the production floor before she received medical restrictions, altered the conditions of her employment. Indeed, it is clear that these two comments are not as egregious as the direct physical threats involved in *Silk* -- which the Seventh Circuit found insufficiently severe or pervasive to alter the conditions of Silk's employment. It is also pertinent that the supervisory behavior about which she now complains was the request that she work on the production floor in accordance with her job duties. Most important, Plaintiff provides no evidence that Mr. Martinez's vague comments impeded her job performance.

In short, under the test set forth by this Circuit in *Silk*, Plaintiff fails to establish that Mr. Martinez's alleged comments created a hostile work environment. Even if Plaintiff could prove that Mr. Martinez made an offhand remark calling her "crazy," or asked her to continue working on the production floor before her doctor issued a restriction precluding it, these comments were not so severe or pervasive that they altered the conditions of her employment. Thus, even if Plaintiff had stated a hostile work environment claim in her EEOC charge relying on these comments, (which she did not), she could not establish the claim as a matter of law.

## **CONCLUSION**

Since Plaintiff failed to exhaust her administrative remedies and the undisputed evidence shows that her hostile work environment claim fails as a matter of law, Defendant respectfully requests that the Court grant its motion for summary judgment.

**DATED:  March 18, 2022**               Respectfully submitted,

                                                          ARCELORMITTAL USA LLC

                                        By: */s/ Ryan L. Young*
                                                    One of its Attorneys

Lynn A. Kappelman  
lkappelman@seyfarth.com  
Seyfarth Shaw LLP  
Seaport East, Suite 300  
Two Seaport Lane  
Boston, MA 02210-2028  
Tel: (617) 946-4800  
Fax: (617) 946-4801  

Ryan L. Young *(Pro Hac Vice)*  
ryoung@seyfarth.com  
SEYFARTH SHAW LLP  
233 South Wacker Drive, Suite 8000  
Chicago, Illinois  60606  
Tel:  (312) 460-5000  
Fax: (312) 460-7000  

*Attorneys for Defendant*

80687840v.2

## **CERTIFICATE OF SERVICE**

I certify that on March 18, 2022, I caused a true and correct copy of **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** to be filed via the CM/ECF system, which will notify counsel of record, including the following:

> John Emry
> 62 W. Jefferson Street
> Franklin, IN 46131
> johnemry1@yahoo.com

           */s/ Ryan L. Young*
            Ryan L. Young

80687840v.2